# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 17-201** |
| **JEREMY ESTEVES** | **SECTION I** |

## ORDER & REASONS

Before the Court is defendant Jeremy Esteves's ("Esteves") motion[1] to sever his trial from the trial of his capital codefendants Lilbear George ("George"), Curtis Johnson, Jr. ("Johnson"), and Chukwudi Ofomata ("Ofomata"). Esteves argues that a joint trial with his capital codefendants will cause him prejudice, warranting a severance. In the alternative, Esteves argues that the Court should employ two juries at the joint trial: one death-qualified jury and a separate jury for the non-capital defendants.[2] For the following reasons, the motion is denied.

### I.

This case arises out of an armored truck robbery and the murder of Hector Trochez, which occurred on December 18, 2013. On November 9, 2017, a grand jury returned a four-count superseding indictment against defendants George, Esteves, Johnson, Ofomata, Robert Brumfield, III ("Brumfield"), and Jasmine Theophile.[3]

---

[1] R. Doc. No. 168. Esteves also filed two supplemental motions to sever. R. Doc. Nos. 176, 196.
[2] R. Doc. No. 176.
[3] *See generally* R. Doc. No. 23.

Esteves and four of his codefendants were charged in three of the four counts set forth in the superseding indictment, one of which alleges a conspiracy.[4] Specifically, the superseding indictment charges Esteves, George, Ofomata, Johnson, and Brumfield with conspiring to obstruct, delay, and affect commerce by robbery (otherwise known as a Hobbs Act robbery); aiding and abetting one another to commit a Hobbs Act robbery; and aiding and abetting one another to knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence and, in the course thereof, causing the death of Hector Trochez through the use of firearms.[5]

## II.

"It is the rule, not the exception, 'that persons indicted together should be tried together, especially in conspiracy cases.'" *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010) (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)). Federal Rule of Criminal Procedure 8(b) states,

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

---

[4] *See generally* R. Doc. No. 23.
[5] R. Doc. No. 23, at 1–3. Count four of the superseding indictment charges George and Jasmine Theophile with aiding and abetting each other to alter, destroy, mutilate and conceal a cellular telephone with the intent to impair its integrity or availability for use in an official proceeding. *Id.* at 3–4.

2

"There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).

However, if a joint trial would cause prejudice to a defendant, the court may sever the defendants' trial. Fed. R. Crim. P. 14(a). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The moving defendant bears the burden of proving that prejudice will result if the district court does not grant a severance. *See Thomas*, 627 F.3d at 156–57.

"It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. The Fifth Circuit has "held that the mere presence of a spillover effect does not ordinarily warrant severance." *Pofahl*, 990 F.2d at 1483 (citing *United States v. Rocha*, 916 F.2d 219, 228 (5th Cir. 1990)). However, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539. Even so, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *United States v. McRae*, 702 F.3d 806, 823 (5th Cir. 2012) (quoting *Zafiro*, 506 U.S.at 539).

Esteves argues that he will be prejudiced by a joint trial with his capital codefendants and, therefore, his trial should be severed because (1) a death-qualified jury is more conviction-prone, (2) Esteves will be judged by the higher culpability of his codefendants, (3) case management, specifically the process of voir dire, supports severance, and (4) Esteves is entitled to a speedy trial, which will be delayed if the Court grants Ofomata's motion to continue the trial.[6]

### A.

Impaneling a death-qualified jury does not entitle Esteves to a severance. The Sixth Amendment gives a defendant the right "to have his guilt or innocence determined by an impartial jury selected from a representative cross-section of the community." *Lockhart v. McCree*, 476 U.S. 162, 167 (1986). "'To establish a prima facie violation' of the fair cross-section requirement, a defendant must show among other matters, 'that the group alleged to be excluded is a distinctive group in the community.'" *United States v. Simpson*, 645 F.3d 300, 312 (5th Cir. 2011) (quoting *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2011)).

> Prospective jurors come from many different backgrounds, and have many different attitudes and predispositions. But the Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.

*Lockhart*, 476 U.S. at 183–84.

---

[6] R. Doc. No. 168-1.

In *Witherspoon v. State of Illinois*, 391 U.S. 510 (1968), the Supreme Court held that the government may exclude from a jury those veniremen who made it clear they would never vote to impose the death penalty, but the government cannot exclude "veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon*, 391 U.S. at 514. "[T]hose who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." *Lockhart*, 476 U.S. at 176. However, "*Witherspoon*-excludables"—"those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case"—do not make up a distinctive group for fair cross-section purposes, and, therefore, "'death-qualification' does not violate the fair cross-section requirement." *Id.* at 176–77.

This principle likewise applies in a joint trial of capital and non-capital defendants:

> Where, as here, one of the joined defendants is a capital defendant and the capital-sentencing scheme requires the use of the same jury for the guilt and penalty phases of the capital defendant's trial, the interest in this scheme, which the Court recognized as significant in [*Lockhart v. McCree*], coupled with the [government's] interest in a joint trial, argues strongly in favor of permitting 'death qualification' of the jury.

*Buchanan v. Kentucky*, 483 U.S. 402, 419–20 (1987).

5

More recently, in *United States v. Simpson*, 645 F.3d 300, 311–14 (5th Cir. 2011), a death-qualified jury was determined to be constitutionally permissive even in a trial against a non-capital defendant alone where his capital codefendant pled guilty after voir dire. The Fifth Circuit underscored the "two well-established rules of law" that (1) "death-qualified juries do not violate the fair cross-section requirement," and (2) "we presume, absent evidence to the contrary, that jurors will follow their instructions." *Id.* (citations omitted). Relying on *Lockhart*, the Fifth Circuit rejected similar studies submitted by the defendant attempting to show that the death-qualified jury was favorable to the government and it concluded that the defendant was convicted by a "middle class of jurors, who are supposedly impartial and fair." *Simpson*, 645 F.3d at 313. Esteves's argument that a death-qualified jury warrants a severance is rejected.

**B.**

Second, Esteves argues that he will be prejudiced by the spillover effect of the evidence against his capital codefendants "as a result of the evidence disparity."[7] "A spillover effect, by itself, is an insufficient predicate for a motion to sever." *United States v. Snarr*, 704 F.3d 368, 398 (5th Cir. 2013) (quoting *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002)). "The test for severance under Rule 14 is whether the jury could sort out the evidence reasonably and view each defendant

---

[7] R. Doc. No. 168-1, at 2–3.

and the evidence relating to that defendant separately." *United States v. Merida*, 765 F.2d 1205, 1219 (5th Cir. 1985).

"A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. [ ] Thus, the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant if tried separately." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993 (citing *Zafiro*, 504 U.S. at 538–39). "Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudice." *Id.* (citations omitted).

"While the district court must guard against undue prejudice, it need not protect conspirators from evidence of their confederates' acts in furtherance of their common legal aims." *United States v. Manges*, 110 F.3d 1162, 1174–75 (5th Cir. 1997). "We have observed repeatedly that a 'quantitative disparity in the evidence is clearly insufficient in itself to justify severance.'" *Id.* at 1176 (quoting *United States v. Pettigrew*, 77 F.3d 1500 (5th Cir. 1996)). Furthermore "[i]t is clear that a defendant's absence from a particular episode in the conspiracy does not mandate severance." *Rocha*, 916 F.2d at 228 (5th Cir. 1990).

Generally, jury instructions to consider the evidence as to each defendant separately and individually can cure the risk of spillover prejudice, and "it is presumed that juries follow the instructions the court gives them." *United States v.*

*Owens*, 683 F.3d 93, 98–99 (5th Cir. 2012) (citing *United States v. Tarango*, 396 F.3d 666, 677 (5th Cir. 2005) and *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

Along with his capital codefendants, Esteves is indicted in every count of the superseding indictment involving the conspiracy to commit the Hobbs Act robbery.[8] Esteves does not dispute that he was properly joined in the indictment and he does not argue that he played a limited role. Esteves does not provide facts or evidence of any conduct attributable only to his capital codefendants that might "spill over" to his non-capital prosecution. Esteves alleges a spillover effect as a result of the evidence disparity, but he does not specify what factual disparity supports said allegation. The mere fact that Esteves's alleged coconspirators have different degrees of culpability is insufficient by itself to warrant severance and, at this juncture, is purely speculative.

Esteves also argues that his codefendants' prior convictions could increase the chance of prejudice, but Esteves does not provide the Court with any information about which defendants have prior convictions and how they could cause him prejudice.[9] The notices of intent[10] to seek the death penalty describe "other criminal conduct" by the capital defendants, but neither the record nor Esteves provide the Court with information about prior convictions that could prejudice Esteves at the guilt phase of the joint trial.

---

[8] *Supra*, note 3.
[9] R. Doc. No. 168-1, at 3.
[10] R. Doc. Nos. 147 (George), 148 (Johnson), 149 (Ofomata).

8

Additionally, Esteves does not provide reasons why a jury instruction and/or limiting instructions would be insufficient to prevent prejudice from any alleged spillover evidence in a joint trial. The Fifth Circuit pattern jury instructions provide an instruction for cases involving multiple defendants,[11] and this Court will provide additional instructions if necessary. Esteves has not convinced the Court that the jury will be unable to reasonably sort through the evidence and independently view the evidence relating to each defendant. Esteves has failed to satisfy his burden of proof with respect to his severance request as he has not demonstrated the alleged spillover effect.

## C.

Next, Esteves argues that case management favors severance. Specifically, Esteves argues that increased costs and the jury selection process in a capital case favor severance of his non-capital prosecution because voir dire takes longer in capital cases and, therefore, Esteves would be burdened by a longer and more costly trial.[12] The government argues that the interests of judicial economy favor a joint trial.

When considering a motion to sever, "the trial court [is] entitled to consider not only the prejudice to [the defendant], but also 'the government's interest in judicial economy . . . .'" *Thomas*, 627 F.3d at 158 (citing *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978)). As stated above, "[t]here is a strong preference for trying defendants who are indicted together in joint trials." *United States v. Causey*, 185

---

[11] Fifth Circuit Pattern Jury Instructions § 1.23 (2015).
[12] R. Doc. No 168-1, at 4.

F.3d 407, 416 (5th Cir. 1999) (citing *Zafiro*, 506 U.S. at 537). This is especially true for conspiracies. *Thomas*, 627 F.3d at 156.

> Where the Government charges a single conspiracy as it did here, much of the evidence introduced ultimately bears, at least indirectly, on the agreement of the co-conspirators. Once the Government has satisfactorily established the existence of the conspiracy, the same evidence used to convict a particular defendant is admissible against all co-defendants shown to be members of the conspiracy. Given this state of affairs, the interest in judicial economy understandably exerts strong pressures in favor of a joint trial.

*United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976). Additionally, "[t]he Supreme Court 'has long recognized that joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of [a] crime to trial.'" *United States v. Jones*, 303 F.R.D. 279, 287 (E.D. La. 2014) (Morgan, J.) (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)).

As stated, Esteves was charged in three counts of the four-count superseding indictment, and each of the counts in which he was charged are related to the conspiracy to commit the Hobbs Act robbery.[13] Esteves's capital codefendants, George, Johnson, and Ofomata, are all charged in the same three counts.[14] "[T]he government alleges that Esteves was a willing participant in the Hobbs Act Robbery conspiracy and subsequent robbery, and played a significant role in the robbery."[15] A severance, therefore, would require the government to present the same case twice,

---

[13] R. Doc. No. 23, at 1–3.
[14] *Id.*
[15] R. Doc. No. 189, at 17.

10

with much of the same evidence and many of the same witnesses.[16] "Requiring the Government to put on the same evidence twice would needlessly tax the resources of the parties, the Court, and the judicial system as a whole." *Jones*, 303 F.R.D. at 287.[17]

The Court finds that case management does not favor severance at this stage. Esteves has not demonstrated that a joint trial would increase costs or create less effective case management. In fact, the Court acknowledges that a joint trial is generally more effective as it leads to consistent verdicts and avoids "the burden of presenting the same evidence to different juries." *Buchanan*, 483 U.S. at 418–19; *see also United States v. Gray*, 173 F. Supp. 2d 1, 18 (D.D.C. 2001) ("[A]dditional time in

---

[16] *See id.* at 9–10.
[17] Esteves argues that courts often find it more efficient to grant severance in capital cases because the defenses often proceed differently. R. Doc. No. 168-1, at 4. To support this argument, Esteves relies on one study: Jon B. Gould & Lisa Greenman, *Update on the Cost and Quality of Defense Representation in Federal Death Penalty Cases*, Judicial Conference of the United States (Sept. 2010), (the "Report"). The Report is an update to a 1998 report prepared by the Committee on Defender Services Subcommittee on Federal Death Penalty Cases for the Judicial Conference of the United States. *See* Hon. James R. Spencer, Hon. Robin J. Cauthron, & Hon. Nancy G. Edmunds, *Fed. Death Penalty Cases: Recommendations Concerning the Cost & Quality of Defense Representation* (May 1998) (the "Spencer Report").

The Report examines "the cost, quality, and availability of defense representation" and "presents information on the authorization, defense, and management of federal capital cases." Report, at 1–3. The Report provides useful information and recommendations to courts on conducting and managing capital cases. However, the Report provides little guidance regarding severance of non-capital defendants and it does not cite case law. It states that cases involving many defendants, some capital and some non-capital, can be costlier than cases involving defendants who all face capital charges because the defendants often employ different trial strategies. Report, at 81 (citing Spencer Report, at 11). Esteves does not provide any information with respect to his strategy or the trial strategies of his codefendants.

selecting a jury [ ] is far outweighed by the additional time that would be required to conduct a completely separate trial.").

**D.**

Finally, Esteves argues that his right to a speedy trial under the Sixth Amendment and the Speedy Trial Act mandates severance. For reasons more fully explained in this Court's order with respect to the motion to continue, the Court finds that the continuance does not violate Esteves's speedy trial rights.

**III.**

Alternatively, Esteves argues that the Court should employ two juries at the joint trial, i.e., one death-qualified jury for the capital defendants and a non-death-qualified jury for Esteves.[18] Esteves argues that this will diminish any prejudice he might suffer if tried by the same jury as his capital codefendants and it will save judicial resources that would be expended if the trial was severed.[19] The government argues that impaneling two juries would in fact require the Court and the government to expend more resources.[20]

Esteves cites a number of cases, although none from this Circuit, to demonstrate that "[t]he use of separate juries at a joint trial is in wide use."[21]

---

[18] R. Doc. No. 176.
[19] R. Doc. No. 176-1.
[20] R. Doc. No. 189, at 21.
[21] R. Doc. No. 176-1, at 2.

12

However, the separate juries in each of the cases that Esteves cites were used to cure issues not before the Court.[22]

The Court declines Esteves's request because impaneling two juries would lengthen the trial, specifically the jury selection process, causing additional expense and expenditure of judicial resources; impaneling two juries is not required because, as the Court has already explained, Esteves has not demonstrated that he will be prejudiced by a joint trial; impaneling a death-qualified jury does not entitle Esteves to a severance; and the Court can provide any and all necessary jury instructions to prevent potential prejudice.

IV.

For the foregoing reasons,

**IT IS ORDERED** that Esteves's motion and supplemental motions to sever are **DENIED.**

**IT IS FURTHER ORDERED** that Esteves's request for the Court to impanel two juries at the defendants' joint trial is **DENIED.**

New Orleans, Louisiana, December 27, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[22] For example, in *United States v. Sidman*, 470 F.2d 1158 (9th Cir. 1972), a district court impaneled separate juries to avoid a *Bruton* problem. While the Ninth Circuit held that impaneling two juries did not violate any of the defendants' constitutional rights and agreed that the practice was generally more economical than separate trials, the court did not endorse the practice. *Id.* at 1170. The other cases Esteves cites are not analogous to the present case and are, therefore, unhelpful.

13