UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                                         No. 17-201

JEREMY ESTEVES                                                        SECTION I

**ORDER & REASONS**

Jeremy Esteves has filed a motion[1] for a downward departure and/or variance at sentencing. The government opposes the motion.[2] For the following reasons, the Court declines to grant a downward departure. However, the Court will grant Esteves a downward variance with respect to the sentence that the Court will impose.

### A.  *Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

Esteves first argument for leniency focuses on his personal history and characteristics.[3] Esteves notes that he is a lifelong resident of New Orleans, that he graduated high school, and that he received his bachelor's degree from Southern University in Baton Rouge.[4] Esteves and his fiancé, Raedawn Mackey, have an eight-year-old son, Kingston Esteves.[5] Esteves also maintains that "[t]here is nothing to suggest that Jeremy Esteves was aware that weapons were anything other than a

---

[1] R. Doc. No. 1514.
[2] R. Doc. No. 1549.
[3] R. Doc. No. 1514-1, at 5–7.
[4] *Id*. at 5.
[5] *Id*.

show of force. He did not anticipate that anyone would be harmed."[6] In connection with its consideration of the factors set forth in 18 U.S.C. § 3553, the Court reviewed Esteves' entire presentence investigation report, the memoranda filed by his counsel, and the letters submitted on his behalf.

### B.     *Esteves' sentence in relation to those of his co-defendants*

Esteves next advances several interrelated arguments. He contends that he should receive a lesser sentence than George and Ofomata because they were the shooters at the scene of the robbery, and they were "therefore more culpable than [Esteves]."[7] Esteves references 18 U.S.C. § 3553, as well as the Sixth and Eighth Amendments to the United States Constitution. The government responds that "[t]he imposition of a life sentence is appropriate given the nature of the offense and Esteves['] criminal history."[8]

#### 1.     *Disparity among co-defendants*

First, Esteves notes that one of the sentencing factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *See* 18 U.S.C. § 3553(a)(6). "However, this disparity factor [under § 3553(a)(6)] requires the district court to avoid only

---

[6] *Id.* at 6.
[7] R. Doc. No. 1514-1, at 8.
[8] R. Doc. No. 1549, at 9. In Section III(E) (unwarranted sentencing disparities) of its response, the government does not address whether Esteves is similarly situated to his co-defendants. *Id.* at 9. But in Section III(A) (nature and circumstances of the offense), the government contends that the Court "should not be convinced that [Esteves] is entitled to a lesser sentence simply because his sentence will be greater than that of Ofomata's and George's, two of the three gunmen." *Id.* at 5.

2

unwarranted disparities between similarly situated defendants nationwide, and it does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated." *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010) (citing *United States v. Candia*, 454 F.3d 468, 476 (5th Cir. 2006)). [9]

One factor that informs the Court's sentencing decisions is whether Esteves is similarly situated to George or Ofomata. *United States v. Gozes-Wagner*, 977 F.3d 323, 342 (5th Cir. 2020) ("As the Supreme Court has said, 'it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated.'" (quoting *Gall v. United States*, 552 U.S. 38, 55 (2007) (emphasis in *Gall*)); *id.* at 336 ("[T]o the extent Gozes-Wagner's claim depends on a comparison with her co-conspirators, only Voronov is relevant, because he did not cooperate, he pled guilty, and he received a sentence substantially lower than Gozes-Wagner even though his participation in the conspiracy was similar to hers.").

---

[9] Esteves also cites to 18 U.S.C. § 3553(a)(6) in the section of his memorandum arguing that he should not be sentenced more harshly for proceeding to trial. *See* R. Doc. No. 1514-1, at 9. In support of this argument, Esteves cites to *United States v. Reyes-Santiago*, 804 F.3d 453, 467 (1st Cir. 2015). The *Reyes-Santiago* court noted that 18 U.S.C. § 3553(a)(6) is "primarily aimed at national disparities, rather than those between co-defendants[.]" 804 F.3d at 467 (quoting *United States v. Rivera–Gonzalez*, 626 F.3d 639, 648 (1st Cir. 2010)). "[B]ut we have recognized that a sentence may be substantively unreasonable because of the disparity with the sentence given to a codefendant[.]" *Id.* (internal quotation omitted). *See also United States v. Martin*, 520 F.3d 87, 94 (1st Cir. 2008) ("[D]istrict courts have discretion, in appropriate cases, to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability—at least in those cases where disparities are conspicuous and threaten to undermine confidence in the criminal justice system.").

Overall, Esteves is not in all respects similarly situated to George and Ofomata. First, both George and Ofomata pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and accepted responsibility for their conduct.[10] After the Court accepted the plea agreements, George and Ofomata's possible sentencing penalties were limited to a maximum of 480 months imprisonment.[11] With respect to their guideline calculations, both George and Ofomata received a three point reduction for acceptance of responsibility, which Esteves has not received.[12] This difference regarding acceptance of responsibility distinguishes Esteves from George and Ofomata.[13] *See, e.g., United States v. Ayelotan*, 917 F.3d 394, 409 (5th Cir. 2019) ("Mewase offers no proof that he was so similarly situated to coconspirators who received lesser sentences that the disparities are 'unwarranted.' […] Rather, many other coconspirators played much smaller roles, *accepted responsibility*, or cooperated with the Government.") (emphasis added).

Second, Esteves has the most serious criminal history of the co-defendants and he continued to commit offenses while on probation and while in custody.[14] Esteves' criminal history includes convictions in 2013 for intentional concealment of a weapon

---

[10] R. Doc. No. 1390 (George's plea agreement), at 1–2; R. Doc. No. 1392 (Ofomata's plea agreement), at 1–2.
[11] *Id.*
[12] *Compare* R. Doc. No. 1465 (George's final PSR), at 14–15, *and* R. Doc. No. 1467 (Ofomata's final PSR), at 14, *with* R. Doc. No. 1658 (Esteves' final PSR), at 12–13.
[13] Neither George nor Ofomata agreed to cooperate with the government.
[14] R. Doc. No. 1658, at 16 ¶¶ 64–66. After Esteves, George has the most serious criminal history with a score of 8 and a category of IV. *See* R. Doc. No. 1465, at 19 ¶¶ 69–71. Esteves does not dispute his criminal history. *See* R. Doc. No. 1658, at 30–33.

and possession with intent to deliver marijuana.[15] His probation with respect to the marijuana charge was revoked and then terminated unsatisfactorily.[16] He engaged in additional criminal conduct while in custody on more than one occasion.[17] Esteves has convictions for introduction of contraband in 2014, possession of schedule II drugs, and a charge of introduction of contraband in 2015.[18] These convictions evidence Esteves' continued involvement in criminal conduct. Esteves' persistent criminal behavior demonstrates that a lengthy term of imprisonment is necessary.

Overall, George and Ofomata's acceptance of responsibility, Esteves' serious criminal history, the commission of offenses while in custody and on probation, and the significant role played by Esteves, which was much more than a getaway driver, distinguish Esteves from George and Ofomata. The Court concludes that Esteves is not in all respects similarly situated to George and Ofomata. Therefore, with respect to Esteves' sentence, the Court considers the need to avoid unwarranted disparities *and* "the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated." *Gall*, 552 U.S. at 55 (emphasis in original).

      3.     *Sixth Amendment Issue*

Esteves also argues that he should not receive a harsher sentence than George or Ofomata based on his decision to proceed to trial.[19] Specifically, Esteves argues that "[i]f the only meaningful difference in a sentence imposed is that one chose to go

---

[15] *Id.* at 14.
[16] *Id.* at 14–15, ¶¶ 61–62.
[17] *Id.*
[18] *Id.* at 15–16.
[19] R. Doc. No. 1514-1, at 9.

to trial and the other chose to plead guilty[,] there may be a presumption of a trial penalty for going to trial," citing to *Gozes-Wagner*, 997 F.3d 323 (5th Cir. 2020).[20]

The Sixth Amendment gives criminal defendants "the right to a speedy and public trial." U.S. Const. amend. VI.  The Supreme Court has stated that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Therefore, "a defendant cannot be punished by a more severe sentence because he unsuccessfully exercises his constitutional right to stand trial." *Gozes-Wagner*, 977 F.3d at 335 (quoting *United States v. Devine*, 934 F.2d 1325, 1338 (5th Cir. 1991)). As this Fifth Circuit recently observed, this inquiry turns on whether a sentencing court imposed a harsher penalty on the basis that a defendant invoked his right to trial:

> Although they may have participated similarly in the conspiracy, our job is not to look at their two sentences and decide whether we think Voronov and Gozes-Wagner should have been punished more equally based on their conduct. *Instead, our duty is to determine whether the district court sentenced Gozes-Wagner more harshly than it otherwise would have because she went to trial instead of pleading guilty.*

*Gozes-Wagner*, 977 F.3d at 336 (footnotes omitted) (emphasis added).

First, as previously discussed, Esteves is not similarly situated to George and Ofomata in several respects.  There are meaningful distinctions between Esteves and his co-defendants.  *Gozes-Wagner,* 977 F.3d at 337.

---

[20] *Id.*

Second, Esteves conduct was egregious, and, as stated previously, he was more than a mere getaway driver; his involvement was instrumental with respect to the planning of the robbery. The Court will not punish Esteves and impose a more severe sentence than those of his co-defendants because Esteves exercised his right to trial. The fact is that Esteves has demonstrated no remorse, and he continues to argue a false narrative in connection with his sentencing plea. Esteves was a mastermind behind this robbery. This was a cold-blooded killing. Esteves prepared for months, clearly knowing that this was a robbery of an armored car with armed security personnel. During the planning and preparation for the robbery, Trochez was considered a sitting duck by the defendants as Brumfield described him as "fat" and "clumsy." Esteves did not want Brumfield present at the scene of the robbery because Esteves and the others were concerned that Brumfield would "freeze."[21] It was as if Esteves was stalking his prey. Based on the evidence, one can easily conclude that Esteves knew that a discharge of firearms was foreseeable, and that someone, including innocent bystanders, could be killed or injured.

This Court had the full opportunity to hear the testimony at trial, and it was able to quantify the egregious behavior that led to this senseless killing. *Gozes-Wagner*, 977 F.3d at 337 (noting that "the district court judge in this case presided over a four-day jury trial," which "gave the court a full appreciation of Gozes-Wagner and the conduct that led to her conviction."). The fact that Esteves was not a shooter

---

[21] R. Doc. No. 1585, at 87–88 (Hurst testimony) (stating that Esteves "didn't want [Brumfield] at the scene," and Esteves requested that George participate instead).

7

is outweighed by the significant role he played. As the driver of the vehicle, Esteves strategically situated his co-defendants in a position where they could launch their attack. The argument that Esteves was merely a getaway driver is contrary to the evidence.

Finally, as previously stated, Esteves is dissimilar from his co-defendants in that he has a significant criminal record including a weapons-related offense and offenses occurring in jail, indicating a persistent disrespect for the law. His probation revocation, and continuation of criminal conduct while on probation, leads to the conclusion that Esteves is not amenable to supervision.

   2.   *Eighth Amendment Issue*

Esteves also advances a constitutional argument, contending that the Eighth Amendment prohibition against cruel and unusual punishment "prevents treating the robber more harshly than the people who shot and killed during the robbery."[22] Esteves references no caselaw in support of his Eighth Amendment position.[23]

---

[22] R. Doc. No. 1514-1, at 8 (citing U.S. Const. Amend. VIII).

[23] In general, the Eighth Amendment precludes sentences which are greatly disproportionate to the offense. *United States v. Mills*, 843 F.3d 210, 217 (5th Cir. 2016). In subjecting a sentence to Eighth Amendment scrutiny, a court first makes a threshold comparison of the gravity of the offense against the severity of the sentence, and only if the court determines that the sentence is grossly disproportionate to the offense will it compare the sentence to sentences for similar crimes in this and other jurisdictions. *Id.* After stating his Eighth Amendment argument, Esteves cites to *Koon v. United States*, 518 U.S. 81, 113 (1996). *See* R. Doc. No. 1514-1, at 8. But *Koon* does not discuss the Eighth Amendment at all. Esteves also cites to *Mullaney v. Wilbur*, 421 U.S. 684, 698 (1975). *See* R. Doc. No. 1514-1, at 9. *Mullaney* is not on point with respect to Esteves' disparity argument; *Mullaney* ultimately held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 704.

Fifth Circuit jurisprudence does not support the notion that the Eighth Amendment would prohibit the imposition of a greater punishment on Esteves than the punishment that the Court imposed on George or Ofomata. *See, e.g.*, *United States v. Ebron*, 683 F.3d 105, 156 (5th Cir. 2012) (holding, on plain error review, that "[a]lthough Ebron is correct in noting the disparity between his punishment and that faced by others involved in Barnes's murder, his proportionality argument finds no support in existing Eighth Amendment jurisprudence"); *Russell v. Collins*, 998 F.2d 1287, 1295 (5th Cir. 1993) ("[W]e reject [the] claim that the disparity in the sentences imposed on him and on his accomplice violated the Due Process Clause, the Equal Protection Clause, or the Eighth Amendment.").[24]

---

[24] *United States v. Lindsey*, 490 F. App'x 322, 326–327 (11th Cir. 2012) ("As for substantive reasonableness, Lindsey's only argument is that his sentence was disparate as compared to his co-defendants, yet he has failed to demonstrate that he is similarly situated to any of his co-defendants. […] Further, there is no legal support for Lindsey's suggestion that the disparity between his sentence and those of his co-defendants implicates the Eighth Amendment.); *United States v. Rodriguez*, 39 F. App'x 526, 528 (9th Cir. 2002) ("Because the Eighth Amendment prohibits only gross disproportionality between crime and punishment, and not disparity among co-defendants' sentences, this argument is without merit.") (citing *United States v. Cupa-Guillen*, 34 F.3d 860, 864 (9th Cir.1994)); *United States v. Jones*, 696 F.3d 695, 699–700 (7th Cir. 2012) (rejecting defendant's argument that the disparity between his sentence and those of his co-conspirators violated the Eighth Amendment when "[t]he district court indicated that it considered the disparity Jones complains of but found it warranted in light of the seriousness of the offenses, Jones' history, and the fact that he, unlike his co-defendants, had little to offer the Government in terms of cooperation."); *United States v. Johnson*, 495 F.3d 951, 961 (8th Cir. 2007) ("Johnson contends that the Eighth Amendment requires not only proportionality between a sentence and a particular category of crime, but also proportionality between codefendants' sentences. We disagree.").

### C.  *Downward Departure for Acceptance of Responsibility*

In the objections to his PSR, Esteves requests a reduction in his offense level based on his purported acceptance of responsibility.[25] Esteves cites to U.S.S.G. § 3E1.1 in his PSR objections,[26] and in his sentencing motion, which presents this request as "a downward departure for acceptance of responsibility."[27] This issue is resolved in the Court's order and reasons addressing Esteves' PSR objections because U.S.S.G. § 3E1.1 concerns the calculation of Esteves' offense level.  U.S.S.G. § 3E1.1 does not contain a provision for a downward departure.

### D.  *Downward Variance*

Esteves also requests a downward variance.[28]  The Sentencing Guideline are advisory.  *United States v. Booker*, 543 U.S. 220, 226–227 (2005).  All the same, the "Guidelines should be the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007).  "The Guidelines are not the only consideration, however."  *Id.*  "Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the [sentencing court] should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party."  *Id*. at 49–50.  "In so doing, [the court] may not presume that the Guidelines range is reasonable."  *Id*. at 50.  The sentencing court "must make an individualized assessment based on the facts presented."  *Id*.

---

[25] R. Doc. No. 1658, at 31–32 (Objection Nos. 2 & 6).
[26] *Id*. at 32.
[27] R. Doc. No. 1514-1, at 10.
[28] *Id*. at 11.

"If [the court] decides that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*

The Court has considered the advisory guideline range as set forth in Esteves' presentence investigation report and in the order and reasons resolving Esteves' PSR objections. The Court has also considered all of the evidence and materials discussed above. The Court has also considered all the factors set forth in 18 U.S.C. § 3553, including "the nature and circumstances of the offense and the history and characteristics of the defendant" *id.*, § 3553(a)(1), the need for the sentence imposed— "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," *id.*, § 3553(a)(2)(A)–(C), the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines, *id.*, § 3553(a)(4), any pertinent policy statements related to the Sentencing Guidelines, *id.*, § 3553(a)(5), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.*, § 3553(a)(6). For reasons stated at the sentencing hearing, a downward variance is warranted, and the Court will impose a sentence less than life imprisonment.

\* \* \*

For all the foregoing reasons, and the reasons stated by the Court at the sentencing hearing,

**IT IS ORDERED** that with respect to Esteves' motion for a downward departure, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that with respect to Esteves' motion for a downward variance, the motion is **GRANTED** as stated by the Court at the sentencing hearing.

New Orleans, Louisiana, April 20, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**