UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**          **CRIMINAL ACTION**

**VERSUS**          **No. 17-201**

**JEREMY ESTEVES**          **SECTION I**

### ORDER & REASONS

On November 13, 2019, defendant Jeremy Esteves was found guilty of three counts of a second superseding indictment. Specifically, Esteves was found guilty as to count one, conspiracy to obstruct commerce by robbery; count two, obstruction of commerce by robbery; and count three, using, carrying, brandishing, and discharging firearms during a crime of violence, and in the course thereof the defendants caused the death of Hector Trochez, which was murder. Subsequently, Esteves filed 8 objections to his presentence investigation report.[1] The government opposes the objections.[2] For the following reasons, the Court overrules Esteves' objections.

*(A)    Objections Nos. 1 & 5:  Downward Adjustment of Offense Level*

The Court addresses Objections Numbers 1 and 5 together as they both concern the same issue. In essence, Esteves objects to the PSR's failure to grant a mitigating role adjustment. Esteves contends that such an adjustment is warranted because the government did not seek the death penalty against him, and because he was unarmed and remained inside the getaway vehicle during the commission of the armored truck

---

[1] R. Doc. No. 1658, at 30–33.
[2] R. Doc. No. 1520.

robbery.³  Esteves also objects to the statement that "Esteves, Brumfield, Ofomata, George, and Johnson appear to be of equal culpability in the instant offense."⁴

The probation officer rejected Esteves' objection, applying United States Sentencing Guideline § 3B1.2.  In relevant part, the guidelines provide for a downward adjustment of four levels for a minimal participant and a downward adjustment of two levels for a minor participant.  *See* U.S.S.G. § 3B1.2(a), (b).  "A 'minimal participant' is someone who lacks knowledge or understanding about the scope or structure of the enterprise; a 'minor participant' is someone who is less culpable than most participants but more culpable than a minimal participant." *United States v. Broussard*, 882 F.3d 104, 111 (5th Cir. 2018).  "Whether [a defendant] was a minor or minimal participant is a factual determination[.]" *United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)).  "This fact-based determination is based on the totality of the circumstances surrounding the commission of the crime." *United States v. McCain-Sims*, 695 F. App'x 762, 765 (5th Cir. 2017).⁵  The defendant bears the burden of

---

³ R. Doc. No. 1658, at 30.
⁴ *Id.*
⁵ The factors listed in U.S.S.G. § 3B1.2 cmt. n.3(C)(i)-(iv) provide:
    (i.)    [T]he degree to which the defendant understood the scope and structure of the criminal activity;
    (ii.)   the degree to which the defendant participated in planning or organizing the criminal activity;
    (iii.)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
    (iv.)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and

proving by a preponderance of the evidence that he is entitled to a mitigating role adjustment. *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016).[6]

At trial, Jamell Hurst testified that Esteves conducted surveillance of the bank for a period of months in order to plan the robbery.[7] Hurst also testified that Esteves told him that although Brumfield was originally supposed to participate in the robbery, the other participants concluded that Brumfield would "freeze up," and they therefore replaced him with George.[8]

Cedric Wade testified that on the morning of the robbery, Ofomata arrived at his residence to retrieve firearms that would be used during the robbery.[9] George, Esteves, and Johnson were waiting in a nearby vehicle.[10] Hurst stated that when Hurst, joined by Ofomata, went outside Hurst's apartment and observed the silver Tahoe that was the initial getaway vehicle, Hurst saw Esteves in the driver's seat of

---

the responsibility and discretion the defendant had in performing those acts; [and]
(v.) the degree to which the defendant stood to benefit from the criminal activity.

[6] Esteves does not specify whether a two level or four level downward adjustment is warranted in his view. See R. Doc. No. 1658, at 30–32.

[7] On cross-examination, Hurst related that Esteves stated that he planned the robbery for months. *See* R. Doc. No. 1585, at 122.

    Q.    You said that he told you he was planning this for five months; correct?
    A.    He was what?
    Q.    Planning this robbery for five months?
    A.    Yeah, a nice bit -- a few months before.
    Q.    Okay. And you say he said they will get up at 5:00 or 6:00 a.m. and go watch the bank all day; correct? That's what he told you?
    A.    Yeah. He said they'll watch it.

*Id.*
[8] *Id.* at 87.
[9] R. Doc. No. 1583, at 222–229.
[10] *Id.*

the vehicle, and George in the front passenger seat.[11] Ofomata was sitting in the back seat behind Esteves, and Johnson was sitting in the back seat behind George.[12]

Special Agent Elmer testified that Thierry King, an employee of Chase Bank and a person of interest in the case, allowed the FBI to search her cell phone address book.[13] The FBI found both Esteves' and Brumfield's telephone numbers in her phone.[14] The FBI subsequently obtained a warrant to seize King's phone.[15] Special Agent Rayes testified that a telephone number associated with Esteves[16] was one of the top ten most frequent numbers with which King had contact.[17]

In addition to the PSR and testimony at trial, the Court considers the factual basis statements[18] signed by co-defendants Georege and Ofomata.[19] In these

---

[11] *Id.* at 228.

[12] *Id.*

[13] R. Doc. No. 1585, at 177–78.

[14] *Id.*

[15] *Id.* at 179.

[16] Special Agent Rayes testified that billing records established that the telephone number was registered to Esteves' mother, but stated that Esteves was the "user" of the phone. *Id.* at 297–98 (discussing Exhibit No. 48).

[17] *Id.* at 297.

[18] R. Doc. Nos. 1389 (George's factual basis) & 1391 (Ofomata's factual basis).

[19] "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). "Statements by coconspirators are sufficiently reliable to form the basis of a [factual] finding." *United States v. Rico*, 864 F.3d 381, 386 (5th Cir. 2017). A court may even consider out-of-court declarations by an unidentified informant where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means. *United States v. Rogers*, 1 F.3d 341 (5th Cir. 1993); *see also United States v. Young*, 981 F.2d 180 (5th Cir.), *cert. denied*, 508 U.S. 980 (1993); *United States v. Godinez*, 640 F. App'x 385, 387–389 (5th Cir. 2016).

4

statements, George and Ofomata agreed that Esteves agreed to participate in the robbery and that an "individual" observed Esteves driving the Chevy Tahoe that transported the co-defendants to the Chase Bank on the morning of the robbery.[20] Additionally, at George's rearraignment hearing, George stated, in response to a question by the Court, that it was correct that George, "Esteves, Johnson, and Ofomata, all occupied the vehicle" on the date of the robbery.[21]

In light of the totality of the circumstances surrounding the robbery, and after considering the factors listed in U.S.S.G. § 3B1.2, Application Note 3(C)(i)-(iv), the Court finds that Esteves has not demonstrated by a preponderance of the evidence that he is entitled to a mitigating role adjustment. Accordingly, the probation officer did not err in denying such an adjustment, and the Court overrules Objections Numbers 1 and 5.

### (B) Objections Nos. 2 & 6: Reduction for Acceptance of Responsibility

The Court addresses Objections Numbers 2 and 6 together as they both concern the same issue. Notwithstanding his decision to proceed to trial, Esteves argues that he is entitled to an offense level reduction for his acceptance of responsibility

---

George and Ofomata were placed under oath at their joint rearraignment hearing. *See* R. Doc. No. 1524, at 4–5. George and Ofomata both initialed each page of their factual basis statements and signed the last page; and after hearing the government read the documents aloud, both agreed that the statements were correct. *Id*. at 48, 65–66. Because George and Ofomata stated on the record, under oath, that the factual basis statements were correct, and those documents corroborate evidence presented at trial, the Court finds that those statements, *see* R. Doc. Nos. 1389 & 1391, have sufficient indicia of reliability to support their accuracy.

[20] R. Doc. No. 1389, at 3–4; R. Doc. No. 1391, at 3–4.
[21] R. Doc. No. 1524, at 67.

5

pursuant to U.S.S.G. § 3E1.1.  Esteves argues that such a reduction is warranted based on his efforts to encourage his co-defendants to enter pleas of guilty.[22]

The Sentencing Guidelines provide that a defendant who "clearly demonstrates acceptance of responsibility," may obtain a 2-level decrease in his offense level.  U.S.S.G. § 3E1.1(a).  The Guidelines further explain that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  U.S.S.G. § 3E1.1, Application Note 2.  However, as Esteves correctly notes, "[c]onviction by trial […] does not automatically preclude a defendant from consideration for such a reduction." *Id*.

Section 3E1.1, Application Note 1 lists eight illustrative ways that a defendant may demonstrate acceptance of responsibility, including voluntary surrender to authorities promptly after the commission of the offense, and voluntary assistance to authorities in the recovery of the fruits of the offense.[23]  Further, a defendant may demonstrate genuine acceptance of responsibility, but he may proceed to trial to challenge the constitutionality of a statute.  U.S.S.G. § 3E1.1, Application Note 2.

This prosecution began in 2017, almost four years after the offenses at issue.  In that four-year period, Esteves did not demonstrate his acceptance of responsibility by surrendering to authorities or returning the money stolen during the robbery.

---

[22] R. Doc. No. 1658, at 31–33.
[23] "Although entering a guilty plea prior to trial is a factor to be considered in determining whether an adjustment is warranted, it is not dispositive." *United States v. Dean*, 521 F. App'x 332, 333 (5th Cir. 2015).

Further, Esteves contested the facts underlying his guilt at trial, rather than challenging the constitutionality or application of a statute to his conduct. Esteves likewise chose not to cooperate prior or subsequent to his convictions.[24] Notwithstanding any efforts that Esteves may have made to encourage his co-defendants to enter pleas of guilty, Esteves did not clearly demonstrate acceptance of responsibility for his offenses, and a reduction pursuant to § 3E1.1 is not warranted. *See, e.g., United States v. Gaspar-Felipe*, 4 F.4th 330, 342–343 (5th Cir. 2021) (rejecting defendant's argument that he was entitled to a downward adjustment for acceptance of responsibility when the defendant proceeded to trial).

### (C)    Objections Nos. 3, 4 & 7:  Base Offense Level

The Court addresses Objections Numbers 3, 4, and 7 together as they all concern the same issue. Esteves' sentencing objections note that his base offense level is calculated in accordance with U.S.S.G. § 2A1.1(a). Esteves does not dispute that § 2A1.1(a) applies to his convictions, but he argues that Application Note 2(B) "allows for a downward departure when the conviction is for felony murder."[25] Esteves contends that based on "the facts and circumstances of this case,"[26] his base offense level should be "no greater than a level 38 in accordance with U.S.S.G. § 2A1.2, second degree murder."[27] Esteves argues that the killing of Hector Trochez was not a

---

[24] *See* R. Doc. No. 1549 (government response to Esteves' sentencing motion), at 6 (noting, in November 2021, that "the government continues to offer Esteves the opportunity to receive a lesser sentence in this case.").
[25] R. Doc. No. 1658, at 31.
[26] *Id.*
[27] *Id.*

7

premeditated murder and that Esteves did not believe that anyone would be harmed during the robbery. Further, Esteves contends that he did not possess a firearm and that he did not exit the vehicle during the robbery.[28]

The Sentencing Guidelines offense conduct provision for robbery includes a cross-reference to the first-degree murder section: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder)." U.S.S.G. § 2B3.1(c)(1). The Sentencing Guidelines assign a base offense level of 43 to first degree murder. U.S.S.G. § 2A1.1. The commentary makes a significant distinction between premediated killings and killings that are classified as felony murder. *See id.*, Application Notes 2(A), (B).

"Murder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. "Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any […] robbery […] is murder in the first degree." *Id*. "To kill 'with malice aforethought' means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life." *See* Fifth Circuit Criminal Pattern Jury Instructions § 2.52A (2019). "To find malice aforethought, [one] need not be convinced that the defendant acted out of spite, hatred, malevolence, or ill will toward the victim." *Id*. "A killing is 'premeditated' when it is the result of planning or deliberation." *Id*.; *see also United States v.*

---

[28] *Id.* at 32.

8

*Agofsky*, 516 F.3d 280, 282 n.2 (5th Cir. 2008) (citing the pattern instruction with approval). "The amount of time needed for premeditation of a killing depends on the person and the circumstances." *See* Fifth Circuit Criminal Pattern Jury Instructions § 2.52A (2019). "It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent." *Id*. "Proof of premeditation or deliberation is not required under the felony murder component of [18 U.S.C.] § 1111." *United States v. El-Zoubi*, 993 F.2d 442, 449 (5th Cir. 1993).

"In the case of premeditated killing, life imprisonment is the appropriate sentence if a sentence of death is not imposed." U.S.S.G. § 2A1.1, Application Note 2(A). "A downward departure would not be appropriate in such a case." *Id*. "A downward departure from a mandatory statutory term of life imprisonment is permissible only in cases in which the government files a motion for a downward departure for the defendant's substantial assistance, as provided in 18 U.S.C. § 3553(e)." *Id*.

With respect to felony murder, "[i]f the defendant did not cause the death *intentionally* or *knowingly*, a downward departure *may* be warranted." U.S.S.G. § 2A1.1, Application Note 2(B) ("Felony Murder") (emphasis added). *See also United States v. Manfre*, 368 F.3d 832, 844 (8th Cir. 2004) (affirming a departure with respect to § 2A1.1 when the district court found that the defendant's "state of mind was such that [the court didn't] think he intended that to happen."); *El-Zoubi*, 993 F.2d at 450 ("Because the fire fighter's death was not caused intentionally or knowingly, the court downwardly departed[.]" (discussing *United States v. Paden*, 908 F.2d 1229 (5th Cir.

9

1990))). "For example, a downward departure may be warranted if in robbing a bank, the defendant merely passed a note to the teller, as a result of which the teller had a heart attack and died." *Id*. "The extent of the departure should be based upon the defendant's state of mind (*e.g.*, recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct." *Id*. *See also United States v. Nichols*, 169 F.3d 1255, 1277 (10th Cir. 1999) ("if a district court chooses to depart, the *extent* of that departure should be based on a number of enumerated factors.") (emphasis in original).

Assuming for the sake of Esteves' argument that felony murder, not premeditated murder, is the proper basis for the application of U.S.S.G. § 2A1.1 in this case, a downward departure is not warranted. Although Esteves filed objections to the PSR, he has not contested the fact that Esteves actively planned the Loomis armored truck robbery over a period of months.[29] Esteves' phone number was discovered in a Chase Bank employee's phone.[30] Further, Esteves was driving the vehicle transporting his co-defendants when they departed Cedric Wade's apartment on the morning of the robbery after Ofomata had retrieved a duffle bag containing

---

[29] *Compare* R. Doc. No. 1658, at 30–33 (Esteves' PSR objections) *with id*. at 8 ¶ 21. *See also* R. Doc. No. 1585 (Jamell Hurst testimony), at 87, 122 (agreeing that Esteves planned the robbery for months).
[30] R. Doc. No. 1658, at 8 ¶ 19. *See also* R. Doc. No. 1585 (FBI Agent Rayes testimony), at 296–298 (discussing that Esteves was one of the top 10 callers for Chase Bank employee Thierry King).

firearms.[31]  Esteves also served as the getaway driver from the scene of the robbery.[32] Further, Trochez's death resulted from the co-defendants' discharge of firearms as they carried out the robbery.  Esteves parked the stolen Tahoe, the getaway vehicle, in a position in the parking lot where the armed co-defendants could not sneak up on Trochez and order him to drop his gun.  The position of the vehicle also acted as a shield for Esteves' co-defendants as they exited the passenger side of the Tahoe.

Taken together, these facts demonstrate an advanced level of preparation and an awareness on Esteves' part that his co-defendants planned to carry weapons as they committed a robbery of an armored truck with guards who also possessed firearms.  The evidence demonstrates that Esteves understood his plan involved a high degree of risk and that he voluntarily chose to proceed with the robbery.  *See generally United States v. Jordan*, 945 F.3d 245, 264 (5th Cir. 2019) (noting that bank robbery is "by its nature, a violent crime."). Although U.S.S.G. § 2A1.1, Application Note 2(B) provides for the possibility of a downward departure, based on the facts of this case, such a departure is not warranted.  Accordingly, the Court overrules Esteves' Objections Numbers 3, 4, and 7.

---

[31] R. Doc. No. 1583, at 222–229.  Specifically, Wade states that Esteves was in the driver's seat of the Tahoe in which Ofomata, George, and Johnson were passengers. *Id*. at 228.  *See also* 1389, at 4; R. Doc. No. 1391, at 4.

[32] R. Doc. No. 1514-1 (Esteves' sentencing memorandum), at 6 (appearing to concede that Esteves was the get-away driver) ("However, as the government has acknowledged, *Jeremy Esteves was the driver of the vehicle*, was not armed, did not exit the vehicle and did not fire upon Hector Trochez." (emphasis added)); *see also* Doc. No. 1524 (George rearraignment transcript), at 67 (stating, under oath, that George, Esteves, Johnson, and Ofomata "all occupied the vehicle" on the day of the robbery); R. Doc. No. 1658, at 30 ("[T]he evidence presented at trial suggest[ed] that [Esteves] was the driver of the Tahoe[.]").

### (D)   Objection No. 8:  *Factors that warrant a departure*

Lastly, the Court addresses Objection Number 8 in which Esteves contends that there are factors warranting a departure from the Sentencing Guidelines, including his role in the offense, as well as his history and characteristics pursuant to 18 U.S.C. § 3553.

With respect to Objection Number 8, Esteves has not identified any Sentencing Guidelines provision authorizing a departure, and such objection is overruled. The Court will address Esteves' additional arguments for a downward departure and variance[33] in a separate order and reasons.

\*   \*   \*

For all the foregoing reasons,

**IT IS ORDERED** that with respect to Objections Numbers 1, 2, 3, 4, 5, 6, 7, and 8, Esteves' objections are **OVERRULED**.

New Orleans, Louisiana, April 20, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[33] R. Doc. No. 1514 (Esteves' motion).